[No. A095698. First Dist., Div. Three. Sept. 12, 2002.]

HARRY W. LOW, as Insurance Commissioner, etc., Plaintiff, v.
GOLDEN EAGLE INSURANCE COMPANY et al., Defendants and
Respondents;
FRED GLUCKMAN et al., Claimants and Appellants.

## COUNSEL

Michael M. Angello for Claimants and Appellants.

Koeller, Nebeker, Carlson & Haluck and Richard P. Edwards for Defendant and Respondent Golden Eagle Insurance Company.

Luce, Forward, Hamilton & Scripps, Mitchell L. Lathrop, Kathy P. Waring and Andrew R. McCloskey for Defendant and Respondent Golden Eagle Insurance Company Liquidating Trust.

## OPINION

**PARRILLI, J.**—The procedural convolutions of this 15-year-old case have resulted in what appears to be a question of first impression in insurance subrogation law: When the amount of an insured's recovery from a tortfeasor is capped due to an error in the insured's complaint, does this cap also limit the recovery of an insurer that intervenes to claim subrogation? While we recognize the long-standing rule that a subrogated insurer stands in the shoes of its insured and is subject to all defenses that may be asserted against the insured's claim, under the unique circumstances of this case we conclude the insurer's default judgment against a tortfeasor for subrogation may not be reduced in a later proceeding under Insurance Code section 11580, subdivision (b)(2)[1] because of a pleading error that limited amounts the insured parties could recover.

In this appeal, claimants Fred Gluckman and Dr. Margot Aiken seek relief from a judgment denying their application for an order to show cause against the California Insurance Commissioner, as conservator of Golden Eagle Insurance Company (Golden Eagle). Claimants contend the trial court erred in limiting the amount of their recovery on one default judgment and in disallowing recovery on a second default judgment, which they had obtained by an assignment from their insurer. They also claim they were wrongly denied a full hearing on their bad faith claim against Golden Eagle. We reverse the judgment insofar as it precludes claimants from recovering the full amount of the default judgment they obtained by assignment from their insurer and we affirm the remainder of the judgment.

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

## Background

In February 1989, S&W Associates (S&W) negligently started a fire while constructing a roof on claimants' home, causing approximately $130,000 in damage. Claimants filed claims for this loss with Allstate Insurance (Allstate), their homeowners insurer, and Golden Eagle, the insurer of S&W. Upon investigating the claim, Golden Eagle determined S&W had fraudulently obtained coverage by misrepresenting itself as a janitorial service, rather than a roofing business. Golden Eagle denied the claim and rescinded the S&W policy. Claimants did successfully obtain $130,000 from Allstate under their homeowners insurance policy.

Claimants sued S&W and others, alleging $130,000 in property damage and $180,000 in lost property value and praying for compensatory damages "in an amount in excess of $25,000.00." Allstate intervened in this lawsuit. In its complaint-in-intervention against S&W, Allstate claimed a priority right of subrogation and sought to recover the $130,000 it had paid to claimants. After Golden Eagle refused to defend S&W, claimants obtained a default judgment against S&W for slightly over $2.2 million. Allstate later obtained its own default judgment against S&W for $190,429.88 (representing the payment to claimants plus costs and interest).

Seeking to recover on the $2.2 million default judgment, claimants filed suit against Golden Eagle under section 11580, subdivision (b)(2), which allows a judgment creditor to bring a direct action for recovery against the liability insurer.[2] Golden Eagle answered the complaint but successfully moved to reduce the amount of the judgment to the $25,000 sum set forth in the prayer of claimants' complaint against S&W. During the next four months, claimants obtained an assignment of Allstate's rights against S&W and amended their complaint against Golden Eagle to pursue collection of the $190,429.88 default judgment as Allstate's assignees. The case proceeded to trial. A jury found that S&W had made material misrepresentations to Golden Eagle in applying for coverage, but Golden Eagle was estopped from rescinding the policy because Golden Eagle continued to accept premiums and even increased the policy limits after it had notice of S&W's roofing activities. However, the jury also found claimants were not entitled to recover from Golden Eagle under section 11580.

Claimants appealed the judgment entered on this jury verdict. They claimed the trial court erred in (1) reducing the amount of their default judgment against S&W to the $25,000 set forth in the prayer of their

---

[2]The record on appeal includes only the first two pages of this complaint, which is titled "Complaint for Collection of Judgment, Bad Faith and for Declaratory Relief."

complaint, and (2) permitting Golden Eagle to litigate the issue of S&W's liability. Division One of the Fourth District Court of Appeal upheld the reduction in claimants' default judgment but reversed on the second ground (because the default judgment conclusively established S&W's liability). The Court of Appeal's opinion did not mention the default judgment obtained by Allstate, or any rights claimants might have had to recover on this judgment by assignment. In a petition for rehearing, claimants asserted the court's approval of the reduction of their default judgment was at odds with *Greenup v. Rodman* (1986) 42 Cal.3d 822 [231 Cal.Rptr. 220, 726 P.2d 1295]. They also stated the court's opinion "overlook[ed]" the "housekeeping issue[]" of claimants' right to recover on the Allstate default judgment. Since Golden Eagle never sought to reduce this judgment, claimants asked that the opinion be modified to instruct the trial court to enter judgment against Golden Eagle and for claimants for the full amount of Allstate's default. After the Court of Appeal denied rehearing, claimants renewed these arguments in a petition for review in the Supreme Court, which was also summarily denied.

While claimants' case was on appeal, the Insurance Commissioner seized Golden Eagle and instituted conservation proceedings. In August 1997, the San Francisco County Superior Court issued an order approving Golden Eagle's rehabilitation plan. Pursuant to the rehabilitation plan, the newly created Golden Eagle Insurance Corporation (GEIC) was responsible for "covered" claims arising under the insurer's policies, and the Golden Eagle Liquidating Trust (GELT) was established to administer "uncovered" claims (such as claims for extra-contractual damages or bad faith) pending against the company. The San Francisco County Superior Court retained jurisdiction to supervise the rehabilitation plan and adjudicate all third party claims asserted against Golden Eagle and the liquidating trust. Accordingly, the court adopted procedures for adjudicating orders to show cause arising from the rejection by GEIC or GELT of covered and uncovered claims.[3]

Upon remand of claimants' case from the Court of Appeal, the trial court (the San Diego County Superior Court) transferred the matter to the San Francisco County Superior Court pursuant to that court's order approving the Golden Eagle rehabilitation plan. Claimants had previously submitted a proof of claim in the conservation proceedings for "$2,206,217.80 plus," and on February 14, 2000, they submitted a "supplemental proof of claim," which described the procedural posture of the case and argued claimants' entitlement to "actual" and "default damages" and a recovery (of unspecified

---

[3]Section 1032 permits claimants to seek judicial review by the liquidation court of adverse claim determinations.

amount) on their bad faith claim.[4] After claimants' claims were denied,[5] they applied to the San Francisco County Superior Court for an order to show cause. The court denied the application and denied claimants' motion for reconsideration or for new trial. This appeal followed.

### DISCUSSION

### I. *Claimants' Right to Recover on Allstate's Default Judgment*

 Claimants assert the trial court erred in denying their claim for recovery of the approximately $190,000 default judgment, which was originally obtained by Allstate against S&W and which Allstate later assigned to them. Because this judgment was never reduced, as claimants' own default judgment was, claimants insist they have a right to recover the full amount as Allstate's assignees. In response, GEIC argues Allstate's subrogation rights were limited to the rights claimants had as Allstate's insureds, and claimants may not recover this same amount twice. Further, GEIC contends res judicata bars claimants from relitigating the issue, since claimants previously asked the Fourth District Court of Appeal and the Supreme Court to approve their right to recover on the Allstate judgment and these courts declined to do so.

We do not believe principles of waiver or estoppel bar claimants from litigating their right to recovery for the Allstate default judgment. There is no indication in the record that this issue was presented to the jury, or otherwise litigated, in the first trial. More importantly, it appears *no judgment* was ever entered against Golden Eagle for the amount of the Allstate judgment. The judgment claimants appealed to the Fourth District Court of Appeal simply reflected the jury's verdict that claimants could recover nothing from Golden Eagle under section 11580. Although claimants asked the Court of Appeal and the Supreme Court to vindicate their position that, upon remand, their recovery from Golden Eagle should encompass the Allstate judgment as well as their own default judgment, these courts properly declined to decide this collateral issue.

We therefore address the merits of GEIC's subrogation argument. As the trial court observed in ruling on claimants' application for an order to show cause, there has been no prior adjudication of Golden Eagle's liability for

---

[4] It is impossible to tell from the appellate record what materials, if any, claimants submitted to GEIC and GELT in support of their original proof of claim.

[5] GELT rejected claimants' uncovered claim (i.e., the bad faith claim) on April 12, 2000. The record on appeal does not include a corresponding notice describing GEIC's action on claimants' covered claims. Because GEIC has not disputed the issue here, or in the trial court, we assume these claims were properly presented to GEIC and were rejected.

Allstate's judgment against S&W. Thus, the only way claimants may recover the Allstate judgment from Golden Eagle is by asserting Allstate's rights (which claimants obtained by assignment). Allstate intervened in claimants' suit against S&W to assert a claim for subrogation. Specifically, Allstate claimed a right to recover in subrogation the $130,000 it had paid claimants, plus assorted costs and prejudgment interest.

■ In general, two avenues of recovery, equitable contribution and subrogation, are available to an insurer who pays for its insured's loss. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296] (*Fireman's Fund*).) "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. [Citations.]" (*Id.* at pp. 1291-1292.) Equitable contribution, however, describes the insurer's "right to recover, not from the party primarily liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured." (*Id.* at p. 1293, italics & fn. omitted.)

■ Unlike the situation in *Fireman's Fund*, Allstate and Golden Eagle clearly insured *different* parties. (Cf. *Fireman's Fund, supra,* 65 Cal.App.4th at p. 1287.) Indeed, although the trial court considered the availability of equitable contribution, claimants here do not purport to assert a right of equitable contribution against Golden Eagle, and they have offered no evidence or argument to show the Allstate and Golden Eagle policies covered the same risk. Rather, claimants insist that, by virtue of an assignment from Allstate, they own a default judgment worth close to $190,000, and they claim they should be allowed to recover this entire sum from Golden Eagle as judgment creditors under section 11580, subdivision (b)(2).[6]

■ As claimants apparently recognize, the $190,000 judgment represents a recovery for Allstate *in subrogation*. But Allstate's subrogation claim

---

[6]Claimants do not contend Golden Eagle is collaterally estopped from challenging the amount of the Allstate default judgment. In the previous appeal of claimants' first judgment against Golden Eagle, the Fourth District Court of Appeal, Division One, held that Golden Eagle had the right to collaterally attack excess damages awarded to claimants in the default proceedings. (*Gluckman v. Golden Eagle Ins. Co.* (June 3, 1999, D026424) [nonpub. opn.].)

was entirely derivative of claimants' substantive claims against S&W: "The right of subrogation is purely derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have. [Citations.]" (*Fireman's Fund, supra,* 65 Cal.App.4th at pp. 1292-1293.)

Because "a subrogated insurer stands in the shoes of the insured and has no greater rights than the insured" (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 350 [70 Cal.Rptr.2d 255]), Allstate was subject to all the defenses S&W (and, by extension, Golden Eagle) either raised or could have raised against claimants. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1596 [26 Cal.Rptr.2d 762] [a subrogated insurer "is subject to all defenses the third party could have asserted against the insured"].) Arguably, one such defense was that claimants could recover no more than the $25,000 sum stated in the prayer of their complaint. GEIC contends Allstate was also bound by this finding because it stood in claimants' shoes as a subrogated insurer. According to GEIC, Allstate was not entitled to recover in subrogation any amount exceeding the established value of its insured's claims.

In response, claimants observe that an insurer may attempt to recover subrogation from a third party tortfeasor by intervening in a suit brought by the insured or by filing its own, independent action. Claimants also insist an insurer who intervenes in an action should not be held accountable for "every pleading flaw" in the case brought by its insured. They rely on *Deutschmann v. Sears, Roebuck & Co.* (1982) 132 Cal.App.3d 912, 914-917 [183 Cal.Rptr. 573], which permitted an intervening insurer to proceed with its subrogation action even after the insured's case was dismissed for failure to file proof of service of the summons. The court in *Deutschmann* stated "an intervener is not limited by every procedural decision made by the plaintiff" and observed that, despite the plaintiff's wishes, an intervener may move to disqualify a judge, or object to pleadings or the court's jurisdiction, or demand a jury trial. (*Id.* at p. 916.) However, although an intervener enjoys the same procedural rights as any other party in litigation, the intervener remains bound to substantive limitations on its recovery imposed by the law of subrogation. (See *Bright v. American Termite Control Co.* (1990) 220 Cal.App.3d 1464, 1470 [269 Cal.Rptr. 793].) Indeed, the *Deutschmann* court observed, "It is true that the failure of the plaintiff to recover from a defendant would likewise deprive an intervener of the right to recover, since

a decision on the merits would affect the rights of both plaintiff and intervener to collect from defendant." (*Deutschmann v. Sears, Roebuck & Co., supra,* at p. 916.)

Courts have held a subrogated insurer has no right to recover from a third party who has been released from liability by the insured. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 21 Cal.App.4th at pp. 1596-1597; see also *Continental Mfg. Corp. v. Underwriters at Lloyds London* (1960) 185 Cal.App.2d 545, 556 [8 Cal.Rptr. 276] [insurer had no right of subrogation where insured had contractually released defendant from liability for negligence].) Nor may an insurer pursue a subrogation recovery if the insured is itself barred from filing suit. (See *Truck Ins. Exchange v. Superior Court, supra,* 60 Cal.App.4th at pp. 349-350 [insurer could not intervene to claim subrogation where insured lacked capacity to sue due to its failure to file tax returns].) However, these cases merely illustrate the unremarkable proposition that subrogation is available only if the insured has an existing, legally enforceable cause of action against the tortfeasor. (See 16 Couch, Insurance (3d ed. 2000) § 223:41, pp. 223-63 to 223-65.) They do not decide the precise question before us—i.e., whether an intervening insurer is subject to the same *limitation on damages* that has been imposed on its insured due to a jurisdictional flaw in the insured's complaint. Neither party has directed us to a case addressing this question.

We conclude the rule that a subrogated insurer stands in the shoes of its insured, and is subject to defenses against claims by the insured, cannot be applied to limit Allstate's recovery for subrogation amounts appropriately pleaded in its complaint against S&W. In accordance with Code of Civil Procedure section 580 and *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915], claimants' default judgment against S&W was reduced to the $25,000 stated in their complaint's prayer for relief even though the body of the complaint described many thousand dollars more in damages. The purpose of the rule that a plaintiff's relief on default cannot exceed the amount prayed for in the complaint "is to insure that defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against them. [Citation.]" (*Becker v. S.P.V. Construction Co., supra,* at p. 493.) But, while application of the *Becker* rule limited claimants' damages on default to $25,000, Allstate's complaint-in-intervention put S&W on notice that the actual damages were much greater.[7] Thus, allowing Allstate to recover the full amount of its subrogation default judgment does not frustrate the

[7] For this purpose, Allstate's complaint-in-intervention was analogous to a statement of damages served on a defaulting defendant pursuant to Code of Civil Procedure section 425.11.

purpose of the rule limiting the amounts recoverable in default judgments. Under the contrary view urged by GEIC, a defaulting party who had actual notice could hide behind one plaintiff's pleading flaw to avoid paying the full extent of damages claimed by another. Such a result would be inconsistent with the fundamental fairness rationale underlying Code of Civil Procedure section 580. (See *Becker v. S.P.V. Construction Co., supra,* at p. 494 ["The notice requirement of section 580 was designed to insure fundamental fairness"].)

■ Moreover, although it is often said an insured and a subrogated insurer share a single cause of action, these parties cannot recover the same damages. "When, as often happens, the insured is only partially compensated by the insurer for a loss (because of deductibles, policy limits, and exclusions), operation of the subrogation doctrine 'results in two or more parties having a right of action for recovery of damages based upon the same underlying cause of action.' [Citation.] The insured retains the right to sue the responsible party for any loss not fully compensated by insurance, and the insurer has the right to sue the responsible party for the insurer's loss in paying on the insurance policy. [Citation.]" (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908 [92 Cal.Rptr.2d 151]; see also *Bright v. American Termite Control Co., supra,* 220 Cal.App.3d at p. 1469 [noting "only Allstate possessed the right to sue to recover the subrogated property loss and only the Brights had the right to sue to recover for their personal injuries"].)

■ In the present case, claimants sought additional and different damages from S&W than those Allstate sought in intervention.[8] Because the measure of a subrogated insurer's recovery is generally different than the recovery of the insured party (see *Allstate Ins. Co. v. Mel Rapton, Inc., supra,* 77 Cal.App.4th at p. 908; *Bright v. American Termite Control Co., supra,* 220 Cal.App.3d at p. 1469), and because Allstate's complaint-in-intervention gave S&W notice of the full extent of property damages, we conclude the procedural limitation imposed on the claimants' recovery from S&W should not be applied to limit Allstate's subrogation recovery. Unlike claimant's complaint against S&W, Allstate's complaint-in-intervention was not defective; it gave S&W notice of the full extent of property damage for which Allstate sought subrogation. The third party tortfeasor would receive an unfair windfall if an insured's defective pleading of its damages could cut off a subrogated insurer's right to recover its own damages. (Cf. *Conservatorship of Edwards* (1988) 198 Cal.App.3d 1176, 1184 [244 Cal.Rptr. 330]

---

[8]Specifically, in addition to property damage in an amount "no less than" $130,000, claimants alleged a loss "no less than" $180,000 in the fair market value of their property and unspecified damages for lost profits, assorted fees and expenses, and emotional distress.

[settlement by an insured does not impair the insurer's subrogation rights if the tortfeasor had knowledge the insurer had provided indemnification].)

Finally, in what it concedes is a "catch-22" argument, GEIC claims the Allstate judgment is worth nothing because an insurer is entitled to recover subrogation only after its insured has been "'made whole,'" or fully compensated for its losses. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 104 [102 Cal.Rptr.2d 36]; see also *Sapiano v. Williamsburg Nat. Ins. Co.* (1994) 28 Cal.App.4th 533, 535 [33 Cal.Rptr.2d 659] [insurer not entitled to subrogation where insured's settlement with third party tortfeasor was not sufficient to compensate for full extent of the insured's loss].) Because claimants have repeatedly complained the $25,000 default judgment did not fully compensate them for their losses, GEIC argues Allstate would not have been entitled to recover subrogation, and hence claimants can recover nothing as assignees of Allstate's subrogation judgment. Application of the "made whole" rule in this case would therefore yield the perverse result of denying claimants any further recovery *because* they were not fully compensated in the first place. In any event, this argument fails because a court judgment on behalf of the insured is considered to be determinative of the amount of the insured's loss, such that the amount awarded constitutes a full recovery for purposes of establishing the insurer's right to subrogation. (16 Couch, Insurance, *supra,* § 223:161, p. 223-176.)

Thus, we conclude the trial court erred in limiting claimants' recovery on the Allstate default judgment to $25,000. The question arises whether claimants, as Allstate's assignees, can recover the full amount of the $190,429.88 Allstate default judgment, or whether this sum must be reduced by the $25,000 recovery claimants obtained in their own default judgment. As discussed, an insured and a subrogated insurer cannot recover the same damages. Claimants' complaint against S&W did seek to recover the property damages that are the subject of Allstate's subrogated claim, but it also sought additional damages, such as a decline in the home's fair market value and emotional distress. (See *ante,* fn. 8.) The parties have suggested no principled basis upon which to dissect claimants' $25,000 default judgment into amounts compensating them for property damage as opposed to other losses. More importantly, the record in this appeal includes no transcripts or other record of the evidence claimants presented in the "prove-up" hearing through which they obtained a default judgment against S&W. On remand, the trial court should hold an evidentiary hearing to determine how much of claimants' $25,000 default judgment represents compensation for property damage. This portion must then be subtracted from Allstate's subrogation judgment to avoid a double recovery.

## II. *Amount of Recovery on Claimants' Default Judgment*

Claimants raise two arguments regarding the amount they should recover from Golden Eagle on their default judgment against S&W. First, relying on a statement lifted out of context from *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 [231 Cal.Rptr. 220, 726 P.2d 1295], claimants attempt to reargue the original trial court finding limiting recovery on claimants' default judgment against S&W to the $25,000 amount stated in their prayer for relief. Claimants raised this argument in the Fourth District Court of Appeal, in briefs and a petition for rehearing, and in a petition for review in the Supreme Court. Though not citing *Greenup*, the Court of Appeal conclusively rejected claimants' position. This appellate decision represents a final determination of the issue, and the doctrine of res judicata bars claimants from challenging it here as wrongly decided. (*Beckstead v. International Industries, Inc.* (1982) 127 Cal.App.3d 927, 933-934 [179 Cal.Rptr. 767]; see also *Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 640 [134 P.2d 242] ["An erroneous judgment is as conclusive as a correct one"].) Claimants seek to avoid this bar by asserting unspecified " 'policy considerations' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829 [88 Cal.Rptr.2d 366, 982 P.2d 229]) should prevent the application of res judicata in their "unique situation." We disagree. The Supreme Court in *Vandenberg* discussed policy reasons weighing against the imposition of collateral estoppel when, for example, the prior proceeding took place in an informal setting, without adequate procedural safeguards, or when collateral estoppel is invoked by one who was not a party to the prior litigation. (*Id.* at pp. 829-830.) No such problematic circumstances apply in the present case. On the contrary, because these same parties previously litigated the reduction of claimants' default to a final judgment, which was approved by a Court of Appeal, application of the res judicata bar is entirely appropriate.[9]

Claimants also seek to raise a new argument in this appeal concerning their right to prejudgment interest on the $25,000 default judgment. Without citation to the record, claimants state that a "dispute has arisen" between the parties concerning the date prejudgment interest began to accrue on the default judgment. Claimants' attorney did raise the issue of interest in oral argument on the motion for reconsideration or for new trial, noting the parties had a difference of opinion on the accrual date.[10] The trial court did not resolve the issue, but noted this disputed matter would have to be

---

[9]Because there is a final judgment fixing claimants' recovery on the default judgment at $25,000, claimants are also barred from claiming a greater recovery under section 1028, which generally prohibits the use of a default judgment as evidence, in liquidation proceedings, of liability or a claimant's right to damages.

[10]This appears to be the only mention of the issue in the record before us.

resolved in the first instance by the Golden Eagle trustees. Accordingly, the court stayed its decision on the issues of interest and costs pending the trustees' resolution of the dispute. Claimants have presented us no decision to review, and it appears no judgment has been rendered, regarding claimants' entitlement to prejudgment interest. This issue is not ripe for appellate review.

### III. *Commissioner's Rejection of Claimants' Bad Faith Claim*

■ In their jury trial, claimants pursued a claim against Golden Eagle for bad faith under *Hand v. Farmer's Ins. Exchange* (1994) 23 Cal.App.4th 1847 [29 Cal.Rptr.2d 258] (*Hand*). In accordance with the *Hand* decision, a claimant who has received a final judgment for damages from an insured is considered a third party beneficiary of the insurance policy and may sue the insurer for bad faith in wrongfully refusing to pay the judgment. (*Id.* at p. 1858.) The jury decided claimants were not entitled to recover their losses from Golden Eagle under section 11580 and so did not reach the *Hand* bad faith issue. Because this judgment was reversed on appeal, claimants expected to have another opportunity to litigate their bad faith claim against Golden Eagle. But, since Golden Eagle had been placed in liquidation while the case was on appeal, claimants were forced to pursue the bad faith claim by filing a proof of claim with GELT. Claimants now contend they were denied due process because GELT denied their claim without a hearing.

The short answer to this complaint is that claimants were not entitled to a hearing. The deputy trustees of GELT,[11] acting on behalf of the Insurance Commissioner, received claimants' claim in accordance with procedures set forth in the Insurance Code for adjusting claims against an insolvent insurer. (See § 1010 et seq.) Proceedings under the insurance insolvency laws are "special proceedings" for which express findings of fact and conclusions of are not required. (*Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 328 [74 P.2d 761].) Moreover, "[a] jury trial cannot be demanded as a matter of right in a special proceeding unless it is expressly made available by statute." (*Kinder v. Superior Court* (1978) 78 Cal.App.3d 574, 581 [144 Cal.Rptr. 291].) The insurance liquidation statutes do not provide for jury trials. (*Ibid.*) Claimants have made no attempt to show the trustees failed to consider their bad faith claim in accordance with statutory procedures. Claimants had a right to judicial review of the Insurance Commissioner's decision in an order-to-show-cause proceeding (§ 1032; *Abraugh v. Gillespie* (1988) 203 Cal.App.3d 462, 467 [250 Cal.Rptr. 21]), and they availed

---

[11]Despite claimants' insistence that the claim was arbitrarily denied by "an alleged sub-employee" of the Insurance Commissioner, the rejection notice was in fact signed by the executive director of GELT, acting in his capacity as the liquidator of Golden Eagle.

themselves of this right. Accordingly, they were not denied due process of law.

Claimants also assert the trial court erred in upholding GELT's denial of their bad faith claim. The court below found no abuse of discretion in the trustees' conclusion that Golden Eagle did not act in bad faith in refusing to pay the default judgment claimants obtained against S&W. Claimants do not challenge the trial court's review of the Trustees' decision under the abuse of discretion standard; therefore, we do not consider whether this was the appropriate standard of review. On appeal, however, we review factual findings of the trial court for substantial evidence, resolving all evidentiary conflicts in favor of the judgment. (*Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1622-1623 [50 Cal.Rptr.2d 224].)

In general, injured third parties have no right of action for bad faith against an insurer that fails to pay a claim. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58].) But an action against the insurer is available for "an unreasonable, bad faith refusal to pay a judgment creditor claimant the entire amount of the judgment, after it becomes final. . . ." (*Hand, supra,* 23 Cal.App.4th at p. 1857.) In such circumstances, the *Hand* court described the insurer's duty as the "duty not to withhold in bad faith payment of damages which the insured has become obligated by judgment to pay." (*Ibid.*)

We conclude substantial evidence supports the rejection of claimants' bad faith claim. Golden Eagle had a valid basis for disputing coverage and refusing to pay the default judgment against S&W, because it is undisputed S&W fraudulently procured the Golden Eagle policy by lying about the nature of its business. Golden Eagle only became responsible for paying this judgment after a jury found Golden Eagle was on notice of the fraud and was therefore estopped from denying coverage. Nevertheless, claimants assert Golden Eagle acted in bad faith by attempting to hide its prior knowledge of S&W's roofing activities. Specifically, they claim Golden Eagle destroyed contemporaneous log notes of a telephone call from an insurance agent informing Golden Eagle about S&W's roofing activities. Claimants also allege Golden Eagle "bribe[d]" Sandra Mehas, the person who procured the S&W policy, into giving favorable testimony for Golden Eagle. We have reviewed the selective collection of documents and transcript pages in the appellants' appendix, which claimants cite as proof of Golden Eagle's bad faith, and have identified no basis for disturbing the decision of the trustees and the trial court. Claimants have shown only that, while contemporaneous log notes were often made of telephone calls at Golden Eagle, the company's file on S&W contained no notes of a specific phone call. Claimants did not

establish that a note was made and later destroyed. In fact, Golden Eagle's attorney produced to claimants a memorandum indicating the company was put on notice of S&W's roofing activities in 1988. Nor does the record contain evidence supporting claimants' allegation of bribery. On the contrary, it appears Golden Eagle paid Ms. Mehas $2,500 to procure a release from her of claims she might assert against the company, including potential bad faith claims, arising from two insurance policies.[12]

## DISPOSITION

The judgment is reversed insofar as it limits the value of the Allstate default judgment to $25,000. The matter is remanded for a hearing to determine the amount claimants may recover on the Allstate default judgment, consistent with the views expressed above. In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.

A petition for a rehearing was denied October 11, 2002.

---

[12]In the release, Ms. Mehas states: "I made contact with the representatives of Golden Eagle and proposed this Release because I felt it was the ethical thing to do, after I was contacted by representatives of Mr. Gluckman, who offered to buy an assignment of claims against Golden Eagle from me." Ms. Mehas also released claims relating to Golden Eagle's delay in adding a certain car to S&W's commercial automobile policy.