[No. A129089. First Dist., Div. One. Nov. 28, 2011.]

DAVE JONES, as Insurance Commissioner, etc., Plaintiff and Respondent,
v.
GOLDEN EAGLE INSURANCE CORPORATION, Defendant and
Respondent;
GREENWICH INSURANCE COMPANY et al., Claimants and Appellants.

COUNSEL

Morris Polich & Purdy, Richard H. Nakamura, Jr., Jeffrey S. Barron and Pamela A. Palmer for Claimant and Appellant Greenwich Insurance Company.

Musick, Peeler & Garrett and Lawrence A. Tabb for Claimants and Appellants TIG Insurance Company and Fairmont Insurance Company.

Tressler, Linda Bondi Morrison and Adam C. Hackett for Claimant and Appellant Fireman's Fund Insurance Company.

Susson, Parrett & Odell and Steven Odell for Claimant and Appellant Wilshire Occidental Fire & Casualty Company of North Carolina.

Edwards & Hunter, Richard P. Edwards and Ellen E. Hunter for Defendant and Respondent.

## OPINION

**MARGULIES, J.**—A series of individuals (hereafter plaintiffs) sued Calsol, Inc. (Calsol), an insured of defendant Golden Eagle Insurance Corporation (Golden Eagle), in separate but similar personal injury lawsuits. Although Calsol was in bankruptcy, the bankruptcy court granted the plaintiffs limited relief from the automatic stay, allowing them to pursue claims against Calsol on the condition any judgment could be enforced only against Calsol's insurers, not against Calsol itself.

Golden Eagle was itself in conservatorship. As part of its plan of rehabilitation, Golden Eagle had adopted a procedure for administering claims made under the insurance policies it had issued, and it notified the plaintiffs it

would require them to pursue their covered claims against Golden Eagle in the conservatorship proceeding. When the plaintiffs failed to submit timely claims, the Insurance Commissioner declared their claims "denied" and refused demands by Calsol's other insurers to contribute toward the defense of the plaintiffs' lawsuits.[1] The insurers filed an unsuccessful application for an order to show cause (OSC) in the superior court challenging the commissioner's refusal to share costs of defense. We affirm the trial court's denial of the OSC.

## I. BACKGROUND

The plaintiffs sued Calsol and other defendants in nine separate lawsuits, each alleging harm from exposure to Safety-Kleen 105 Solvent (hereafter Safety-Kleen 105), a product used in connection with mechanical repairs.[2] Safety-Kleen 105 consisted largely of "mineral spirits," a complex chemical mixture containing benzene. Calsol, which had since fallen into bankruptcy, supplied mineral spirits to the manufacturer of Safety-Kleen 105 between 1987 and 1998. The bankruptcy court granted the plaintiffs relief from the automatic stay to pursue their claims against Calsol, but the terms of the relief order allowed them to "enforce [a] final judgment only by . . . [¶] . . . [c]ollecting upon any available insurance in accordance with applicable non-bankruptcy law."

During a portion of the time Calsol supplied mineral spirits for use in Safety-Kleen 105, it was covered by comprehensive general liability insurance policies issued by Golden Eagle that ran noncontinuously from May 1986 through February 1995. Appellants, the claimants in this matter (claimants), are other insurers that issued general liability insurance policies to Calsol from 1975 through 2002.[3] Judged solely by the duration of coverage, Golden Eagle had by far the greatest exposure to the plaintiffs' claims; its period of coverage was more than double that of the next-longest insurer.

Golden Eagle was placed in conservatorship in 1997. (See generally *Garamendi v. Golden Eagle Ins. Co.* (2005) 128 Cal.App.4th 452, 459 [27

---

[1] The plan of rehabilitation established two entities to handle the processing of claims against Golden Eagle, under the authority of the Insurance Commissioner. (See *Low v. Golden Eagle Ins. Co.* (2002) 101 Cal.App.4th 1354, 1359 [125 Cal.Rptr.2d 155].) We use the generic term "commissioner" to refer to the various persons and entities acting on behalf of Golden Eagle in connection with the conservatorship proceedings.

[2] The plaintiffs are Ronald and Juanita Silva, Ernest and Debra Brady, Robert and Lindarosa Contreras, Douglas Danaher, Frank and Maricruz Estrada, David Gibbs and Jeanne Oakley, Michael and Retta Huffman, Mark and Marilyn Nieto, and Alan and Sandra Parness.

[3] The claimants are Fireman's Fund Insurance Company, Wilshire Occidental Fire & Casualty Company of North Carolina, TIG Insurance Company, Fairmont Insurance Company, and Greenwich Insurance Company.

Cal.Rptr.3d 239] (*Garamendi v. Golden Eagle*); *Low v. Golden Eagle Ins. Co.,* *supra,* 101 Cal.App.4th 1354, 1359.) As provided in the Insurance Code, the commissioner established an administrative procedure to handle claims against the assets of Golden Eagle. (*Garamendi v. Golden Eagle,* at p. 459.) Pursuant to this procedure, counsel representing the commissioner sent a letter to the plaintiffs' counsel, informing counsel that "a company in liquidation, like Golden Eagle, is entitled to adjust claims of third-party claimants, and in conjunction with that adjustment process, is also entitled to require sworn statements from potential claimants . . . . Golden Eagle has elected to pursue your client's claim in that fashion." The letter enclosed a form referred to in the letter as a "Sworn Statement Proof of Loss" (SSPL) and requested each plaintiff to complete an SSPL and return it to the commissioner within 30 days. Two and a half months later, a second letter was sent stating that although the commissioner had granted extensions of time to the plaintiffs to return the SSPL's, none had been returned. Accordingly, the letter stated, the plaintiffs' claims were "denied."

This approach represented a change of strategy by the commissioner with respect to the handling of similar claims against Calsol. Notwithstanding the conservatorship proceedings, the commissioner had litigated jointly with claimants an earlier series of Safety-Kleen 105 lawsuits filed against Calsol, appearing in state court and sharing the costs of defense and settlement. Assuming the commissioner would do the same with the plaintiffs' lawsuits, claimants sought from Golden Eagle a joint defense commitment for those lawsuits. Citing the plaintiffs' failure to file claims in the conservatorship proceeding and contending that failure "forever bars any coverage potential under [Golden Eagle] policies," the commissioner refused to participate further in the defense of the plaintiffs' lawsuits.

Claimants filed claims of their own in the conservatorship proceeding for the costs of defense and settlement of the plaintiffs' lawsuits, but the commissioner denied them. In the letter announcing the denial of the claims, counsel for the commissioner explained the rationale: "[The commissioner] attempted to resolve the above-referenced action directly with the third-party claimants [i.e., the plaintiffs] by providing those claimants with [an SSPL] form and requesting that that SSPL be completed by the claimants and returned to [the commissioner]. When they failed to do so, [the commissioner] advised that the claim was being denied for lack of sufficient information and for failure to comply with the *Insurance Code*. The claimants were given 30 days in which to seek relief before the Liquidation Court overseeing the liquidation of [Golden Eagle]. No such relief was sought by the Claimants within that 30-day period, and therefore, under the *Insurance Code* and the orders of the Liquidation Court, the Claimants' claim is now barred. Consequently, there is no potential for coverage under any [Golden Eagle] policy. [¶] A similar approach was adopted by [the commissioner]

when you submitted the above-referenced claim. [The commissioner] issued an SSPL to you. . . . Unfortunately, the response which you provided provides little or no information which would allow [the commissioner] to properly adjust or pay the claim in question. We recognize that you are asserting a right to have [Golden Eagle] participate in the defense of these claims. However, in light of the fact that there is no coverage potential due to the Claimants' refusal to participate in the claim process, it follows that there is no duty to defend these actions on the part of [Golden Eagle]."

Claimants filed an application for an OSC in the court in charge of overseeing Golden Eagle's plan of rehabilitation, challenging the refusal to share in defense of the plaintiffs' lawsuits, as well as two other, similar lawsuits.[4] (See Ins. Code, § 1032; *Garamendi v. Golden Eagle, supra,* 128 Cal.App.4th at p. 461.) The court denied the OSC, holding, "The Legislature requires coverage issues arising under Golden Eagle's policies to be processed via the expedited procedures of Insurance Code § 1016 et seq. Those procedures have resulted in the determination that Golden Eagle owes no duty to indemnify, and hence none to defend, to the insureds here. Thus Golden Eagle may not be asked for equitable contribution."

## II.  DISCUSSION

Claimants contend Golden Eagle was required to share costs of defense of the plaintiffs' claims against Calsol, arguing (1) the plaintiffs' failure to return the claim forms did not extinguish Golden Eagle's obligation to defend Calsol because, at most, the failure extinguished the plaintiffs' rights to recover against Golden Eagle, not against Calsol; (2) the plaintiffs' failure to return the claim forms did not extinguish claimants' rights of equitable contribution against Golden Eagle; and (3) claimants' claim forms contained sufficient evidentiary support to trigger Golden Eagle's obligation to defend.

A.  *Legal Background*

Two components of insolvency law are relevant here, governing insolvent insurance companies and bankrupt insureds.

1.  *Insolvent Insurers*

The Insurance Code "authorizes the Commissioner to manage an insolvent insurer's affairs and liquidate it if it no longer can operate profitably." (*Quackenbush v. Mission Ins. Co.* (1996) 46 Cal.App.4th 458, 462 [54

---

[4] The plaintiffs in the two other, similar lawsuits were Jose Cisneros and Monte and Loretta Wilson.

Cal.Rptr.2d 112].) Upon the proper showing, the supervising trial court is directed "to enter an order vesting title to 'all of the assets' of the insurer in the commissioner and directing the commissioner 'to conduct, as conservator, the business' of the insurer, to the exclusion of the insurer's officers and employees." (*Garamendi v. Golden Eagle, supra*, 128 Cal.App.4th at p. 464.) In the role of conservator, the commissioner has a duty "to administer the affairs of the [insolvent insurer] for the benefit of not only the general creditors but also of the policyholders and the public generally." (*Garris v. Carpenter* (1939) 33 Cal.App.2d 649, 654–655 [92 P.2d 688].)

■ Under the Insurance Code, persons having causes of action covered by an insurance policy issued by an insolvent insurer may file a claim in the conservatorship proceeding "even if the claim is undetermined or unliquidated." (Ins. Code, § 1026.) Such claims "may be allowed by the liquidator without requiring such claim to be reduced to judgment, provided it can be reasonably inferred from the proof presented that the claimant would be able to obtain a judgment upon his cause of action against the insured and that such judgment would represent a liability of the person in liquidation under the policy of insurance upon which such claim is founded." (*Id.*, § 1027.) "Although the Insurance Code does not specify the procedure the commissioner is to use in evaluating claims, it has been assumed that an informal process is adequate. . . . The commissioner's determination of claims without providing a hearing to the claimant has been held not to constitute a denial of due process."[5] (*Garamendi v. Golden Eagle, supra*, 128 Cal.App.4th at p. 465.)

We review the determinations of the commissioner for abuse of discretion and are "required to affirm the commissioner's rejection of a claim unless: (1) the commissioner did not fulfill his obligation to provide 'a full and fair determination' of the claim by, for example, failing to 'conduct a thorough investigation of the claim' [citations]; (2) the commissioner's decision to reject the claim was not supported by substantial evidence [citation]; or (3) the commissioner applied an improper legal standard or otherwise based the determination on an error of law." (*Garamendi v. Golden Eagle, supra*, 128 Cal.App.4th at p. 466.)

---

[5] The Insurance Code does not *require* third party claimants to participate in the conservancy proceedings, but it grants the supervising court broad powers to prevent interference with the conservatorship, including the power to enjoin other matters. (Ins. Code, § 1020.) Claimants do not contend the commissioner abused his discretion in denying plaintiffs' claims for nonparticipation, and we assume, without deciding, it was a proper exercise of the commissioner's discretion.

## 2. Bankruptcy

■ Federal law provides that whenever a corporation or individual files for bankruptcy, all legal proceedings against the bankrupt are stayed, a provision referred to as the "automatic stay." (11 U.S.C. § 362(a); *Sternberg v. Johnston* (9th Cir. 2009) 595 F.3d 937, 943.) "The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law." (*Eskanos & Adler, P.C. v. Leetien* (9th Cir. 2002) 309 F.3d 1210, 1214.) Nonetheless, upon a showing of "cause," the bankruptcy court has discretion to grant relief from the automatic stay. (11 U.S.C. § 362(d); *In re Conejo Enterprises, Inc.* (9th Cir. 1996) 96 F.3d 346, 352.) As noted, the bankruptcy court granted the plaintiffs relief from the automatic stay to pursue Calsol's insurers, but the plaintiffs continued to be barred from enforcing any judgment against Calsol itself. The ruling was later affirmed by the Ninth Circuit Court of Appeals. (*In re Calsol, Inc.* (9th Cir., Mar. 8, 2011, No. 09-56389).)

■ Calsol's bankruptcy did not release Golden Eagle and claimants from their obligations under the insurance policies issued to Calsol. Insurance Code section 11580, subdivision (b)(1) expressly preserves the obligation of insurers to honor insurance policies issued to entities that become bankrupt. (E.g., *Webster v. Superior Court* (1988) 46 Cal.3d 338, 346 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, section 11580, subdivision (b)(2) permits a plaintiff who has obtained a judgment against an insured defendant to pursue a cause of action directly against the insurer for enforcement.[6] A judgment is unnecessary when the insured is pursuing a claim covered by a policy issued by an insurer in conservatorship. (Ins. Code, § 1027.)

## B. Golden Eagle's Obligation to Defend Calsol

Claimants first argue they should be allowed to seek the costs of defense from Golden Eagle because, assuming the plaintiffs' failure to pursue their remedy in the conservatorship proceeding extinguished Golden Eagle's obligation to the plaintiffs, it did not extinguish the plaintiffs' claims against *Calsol itself.* Because Calsol continues to be liable to the plaintiffs on the claims that were covered by Golden Eagle policies, claimants argue, Golden Eagle's obligation under its Calsol policies to provide a defense to those claims was not extinguished by the plaintiffs' failure to file a claim.

---

[6] Technically, Insurance Code section 11580 requires all insurance policies to include provisions granting the rights contained in subdivision (b). Although we have not been provided a copy of the various policies issued by Golden Eagle and claimants, we assume they comply with section 11580.

■ Claimants' argument fails to take account of the special circumstances created by Calsol's bankruptcy. The bankruptcy court's order relieving the plaintiffs from the automatic stay restricted the enforcement of any judgment rendered in their lawsuits to Calsol's insurers. In effect, the bankruptcy court permitted the plaintiffs to pursue their remedy against the insurers under the rights granted by Insurance Code section 11580, subdivision (b)(2), without lifting the stay with respect to claims against Calsol (or, rather, its bankruptcy estate). As a result, the plaintiffs' claims are only nominally against Calsol, being pleaded against Calsol only as a means to recover against the insurers. The plaintiffs' lawsuits do not, in fact, place any assets of Calsol at risk.

Because Calsol is not threatened with loss by the plaintiffs' lawsuits, the lawsuits did not trigger Golden Eagle's duty to defend. "An insurer must defend its insured against claims that create a *potential* for indemnity under the policy." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654 [31 Cal.Rptr.3d 147, 115 P.3d 460]; see *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) "Indemnity," in turn, is "compensation given to make the person whole from a loss already sustained." (Black's Law Dict. (5th ed. 1979) p. 692, col. 2.) The plaintiffs' lawsuits presented no "potential for indemnity" under the Calsol policies because there was no possibility Calsol would suffer a loss requiring reimbursement from its insurers, at least from any judgment rendered in the current lawsuits. Accordingly, the plaintiffs' lawsuits did not trigger the duty to defend under Golden Eagle's Calsol insurance policies.

It was not the duty to defend that motivated the insurers' respective decisions to appear and defend the plaintiffs' lawsuits. As a practical matter, Golden Eagle and claimants had little choice but to defend the lawsuits, since they had the potential to trigger the insurers' duties under Insurance Code section 11580, subdivision (b)(2) to pay judgments obtained on claims covered by their Calsol policies. Their own assets were therefore at stake. Once the plaintiffs forfeited their claims against Golden Eagle by failing to participate in the conservatorship proceedings, however, Golden Eagle no longer had any assets at risk in the plaintiffs' lawsuits, either its own or its insured's, and therefore no need or duty to defend.

Claimants argue Golden Eagle continued to have an obligation to defend because the commissioner lacked the authority to extinguish the plaintiffs' claims against Calsol itself, as opposed to their claims against Golden Eagle. Because, as discussed above, the plaintiffs' lawsuits did not trigger Golden Eagle's duty to defend, we need not decide the difficult question of whether the plaintiffs' failure to participate in the conservancy proceeding forfeited their claims against Calsol, as well as their Insurance Code section 11580

claims against Golden Eagle.[7] The issue is not addressed by the statutes governing insurance conservatorship proceedings. For this reason, it is quite distinct from *Quackenbush v. Mission Ins. Co., supra*, 46 Cal.App.4th 458, on which claimants rely. The *Quackenbush* court found that the plain language of the Insurance Code governed the issue before it, whether claimants with contingent or unliquidated claims were permitted to participate in a liquidation plan. (46 Cal.App.4th at pp. 466–467.) In contrast, we find no clear guidance in the insolvency statutes on the very different issue presented here.

## C. *Claimants' Right of Equitable Contribution*

Claimants also contend that even if plaintiffs no longer have a right of recovery against Golden Eagle, claimants' right of equitable contribution against Golden Eagle toward the costs of defense and indemnification is preserved.

Equitable contribution is "the right to recover . . . from a *co-obligor* who *shares* . . . liability with the party seeking contribution. In the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured. Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was *equally* and *concurrently* owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of the risk. The purpose of this rule of equity is to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1293 [77 Cal.Rptr.2d 296], fn. omitted.) The doctrine "is predicated on the common-sense principle that where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." (*Id.* at p. 1295.)

---

[7] We would also be reluctant to resolve this issue in an appeal in which the persons most affected by the ruling, plaintiffs' themselves, are not parties and have not been heard.

Although we concluded above that Golden Eagle had no duty to defend these lawsuits, we assume the doctrine of equitable contribution continues to apply. Even if Golden Eagle and claimants had no risk of actually indemnifying Calsol, they continued to have a risk of payment directly to the plaintiffs under their policies by virtue of Insurance Code section 11580, subdivision (b). The principle underlying the equitable contribution doctrine, which grants "the right to recover . . . from a *co-obligor* who *shares* . . . liability with the party seeking contribution," would continue to operate even though the suit presents solely the risk of payment directly to the plaintiffs.

Nonetheless, the primary requirement of the doctrine of equitable contribution ceased to exist as to Golden Eagle when the commissioner denied the plaintiffs' claims against it. The right of equitable contribution arises "[w]here multiple insurance carriers insure the same insured and cover the same risk." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra*, 65 Cal.App.4th at p. 1293.) The plaintiffs' failure to file claim forms relieved Golden Eagle from any potential liability to the plaintiffs under the Calsol policies. Because Golden Eagle would not be liable in these lawsuits under its policies, it no longer shared the same risk as claimants. Indeed, it would be anomalous to require Golden Eagle to share the cost of defense against claims that present no risk of loss either to Golden Eagle or its insured.

Claimants argue this result is inequitable, since they will be forced to bear the cost of defense and the risk of payment of claims that would otherwise have been covered by Golden Eagle, which, as noted, bore the lion's share of coverage. The argument misunderstands the effect of the plaintiffs' forfeiture. The plaintiffs' failure to file claims against Golden Eagle did not merely relieve Golden Eagle of any potential legal obligation to the plaintiffs. Rather, it constituted a determination that there were no claims covered by Golden Eagle insurance. As a result, the plaintiffs forfeited their right to recover in their lawsuits to the extent their claims are covered by Golden Eagle policies. As a practical matter, it is as though Calsol was without insurance for the periods of Golden Eagle's policies. Accordingly, Golden Eagle's denial did not increase the potential liability of claimants, who continue to be liable only for claims covered by their own policies. While their costs of defense may not be reduced proportionately, their defense costs will be no greater than if Golden Eagle's policies had not existed, which is the practical result of the denial of the plaintiffs' claims. There is nothing inequitable in this result.

Because we find Golden Eagle owes no duty of equitable contribution to claimants as a matter of law, we need not address claimants' final contention that their own claim forms contained sufficient documentation to support their claims.

## III.  DISPOSITION

The judgment of the trial court is affirmed.

Marchiano, P. J., and Banke, J., concurred.