926 N.E.2d 1067 (2010)
Carol CUTTER, as the Commissioner of the Department of Insurance of the State of Indiana, Petitioner-Appellee,
v.
CLASSIC FIRE & MARINE INSURANCE COMPANY, Respondent,
v.
J.W., P.B., K.S., C.S., A.W. and C.L., Claimants of Disputed Claim 83, Claimants-Appellants.
No. 49A05-0906-CV-315.
Court of Appeals of Indiana.
May 5, 2010.
*1068 John T. Hume, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Brett von Gemmingen, Law Office of Brett von Gemmingen, Anchorage, AK, Attorneys for Appellants.
Jon Laramore, Jane A. Dall, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee.

OPINION
CRONE, Judge.

Case Summary
This appeal arises out of insurance liquidation proceedings involving a disputed claim ("DC 83") submitted by Allvest, Inc., to Classic Fire & Marine Insurance Company ("CFM") for indemnification allegedly provided under an insurance policy. In its bankruptcy proceeding, Allvest sold its rights to DC 83 to Brett von Gemmingen, *1069 attorney for J.W., P.B., K.S., C.S., A.W., and C.L. ("the J.W. Claimants"), who had obtained tort judgments against Allvest in an Alaska court. The trial court found that the J.W. Claimants were not entitled to payment from CFM's liquidation estate and dismissed the claim. The J.W. Claimants appeal.[1] We affirm in part, reverse in part, and remand.

Issues
The J.W. Claimants raise five issues, which we consolidate and restate as follows:
I. Whether any payment by CFM's liquidation estate on DC 83 would be barred by the prohibition against double recovery;
II. Whether the judgments obtained in the underlying lawsuit that gave rise to DC 83 may be considered as evidence of CFM's liability and damages; and
III. Whether the J.W. Claimants are entitled to a jury trial in the liquidation proceedings.

Facts and Procedural History[2]
On or about August 14, 1995, CFM,[3] an Indiana insurance company, issued a general liability insurance policy to Allvest, an Alaska corporation, covering the time period from August 1, 1995, to August 1, 1996. On or about May 28, 1996, Allvest sent notice of potential claims against it to CFM. On August 27, 1997, six women filed suit against Allvest ("the Lawsuit") in Alaska, alleging that Allvest's employee had sexually molested them. Allvest notified CFM of the lawsuit and tendered its defense to CFM.
In December 1997, the Department of Insurance of the State of Indiana filed a petition for rehabilitation of CFM with the trial court, which it approved. Accordingly, Allvest began discussing the tender of its defense in the Lawsuit with the Indiana Commissioner of Insurance ("the Liquidator"). In April 1998, the Liquidator accepted Allvest's tender of defense. The Liquidator, on behalf of CFM, hired counsel to defend Allvest in the Lawsuit. Allvest also hired its own attorney. On December 15, 1998, the attorney hired by the Liquidator withdrew from the Lawsuit, the reason for which the parties dispute.
On October 29, 1998, the Department of Insurance filed a petition for liquidation against CFM, which the trial court granted on December 18, 1998. On December 28, 1999, in CFM's Indiana insolvency proceedings Allvest filed a proof of claim based on the Lawsuit for indemnification under the insurance policy.
On April 3, 2001, following a jury trial, five of the six women who had filed the Lawsuit obtained final judgments against Allvest. These five women are the J.W. Claimants. Together, the J.W. Claimants were awarded judgments against Allvest totaling $1,227,337.56.[4] One of the six *1070 women in the Lawsuit settled her claim before trial.
On November 4, 2002, the United States Bankruptcy Court for the District of Alaska placed Allvest in involuntary Chapter 11 bankruptcy. On December 1, 2003, the Alaska bankruptcy court approved a distribution of $437,773.77 to the J.W. Claimants.
Meanwhile, the Liquidator offered to pay Allvest's bankruptcy estate $25,000 on Allvest's claim in CFM's insolvency proceedings. The trustee for Allvest's bankruptcy estate objected to the Liquidator's offer, and Allvest's claim for indemnification from CFM under the insurance policy was then identified as DC 83. On July 25, 2005, the Allvest bankruptcy estate sold DC 83 to the J.W. Claimants' attorney, Brett von Gemmingen. Appellants' App. at 277 n.1 ("Report of Parties' Pre-hearing Conference").
As part of CFM's liquidation and upon the Liquidator's recommendation, the trial court established the procedure for resolving disputed claims.[5] Pursuant to this procedure, the trial court set DC 83 for prehearing conference, and on June 3, 2005, the Liquidator issued a notice of prehearing conference on DC 83.
On October 31, 2005, von Gemmingen filed an appearance in CFM's Indiana insolvency proceedings as to DC 83, stating that he was appearing in the case for the J.W. Claimants. Id. at 210 ("Appearance by Attorney in Civil Case"). The J.W. Claimants filed a demand for jury trial, which was denied on September 18, 2006. The J.W. Claimants also filed a motion for partial summary judgment, arguing that the Alaska judgments against Allvest were entitled to full faith and credit in the Indiana insolvency proceedings. Id. at 215.
On November 10, 2005, the Liquidator submitted to the trial court a report of the parties' conference. In the report, the Liquidator acknowledged that Allvest's bankruptcy estate sold its rights to DC 83 to the J.W. Claimants' attorney, but stated that she was attempting to determine the legal effect of the assignment on CFM's liquidation estate. Id. at 277 n.1. For purposes of the report, the Liquidator referred to Allvest as the claimant but acknowledged that the claim could be owned and pursued by the J.W. Claimants. Id. The prehearing conference was then held on November 14, 2005.
On January 13, 2006, the Liquidator filed her response to the J.W. Claimants' motion for partial summary judgment, arguing that full faith and credit did not require the trial court to recognize Allvest's claim in the amount of the Alaska judgments. On March 31, 2006, the J.W. Claimants filed their reply. On May 26, 2006, the trial court issued an entry denying the J.W. Claimants' motion for partial summary judgment, wherein the trial court concluded as follows:
Full Faith and Credit has no application here because Claimant Allvest is not a judgment creditor from another state. To the contrary, five plaintiffs in an Alaska state court received a judgment against Allvest after CFM's liquidation *1071 date. Of course, Allvest cannot domesticate and seek to enforce a judgment it lost. In addition, no party in the prior Alaska proceeding obtained a judgment against [CFM], including the plaintiffs in that prior case. Because Allvest lacks the basic prerequisite of Full Faith and Credit, namely a judgment of any kind in its favor (including a judgment in its favor against [CFM]), Allvest has no constitutional basis to avoid the same Indiana statutory process that applies to all those claiming against the [CFM] Estate. The effect of the prior Alaska proceedings will be determined through the statutory claims process.
Id. at 333.
On August 31, 2006, the Alaska bankruptcy court approved a distribution of $555,525.93 from Allvest's bankruptcy estate to the J.W. Claimants. On January 16, 2007, the Liquidator filed a motion for partial summary judgment, which presented the following legal issues relevant to this appeal:
1. Courts may not award a double recovery. However, that is what [DC 83] seeks. Five Alaska plaintiffs seek to recover their 2001 judgments against Allvest, both from Allvest's bankruptcy estate and from this liquidation estate. Allvest's bankruptcy estate has already paid nearly $1 million on those judgments. To avoid a double recovery, this Court must offset what has already been paid on those judgments.
Id. at 363.
On March 27, 2007, the J.W. Claimants filed a motion for summary judgment and opposition to the Liquidator's summary judgment motion, arguing that (1) Alaska law applies to the insurance policy; (2) the Alaska judgments are covered by the insurance policy; (3) the Liquidator is liable for the full amount of the Alaska judgments because she defended the Lawsuit on CFM's behalf without reservation of rights and breached her duty to defend; and (4) the Liquidator waived the defenses of double recovery and postjudgment and prejudgment interest asserted for the first time in her motion for summary judgment. Id. at 476. On April 30, 2007, the Liquidator filed her opposition to the J.W. Claimants' summary judgment motion and reply in support of its summary judgment motion. Id. at 626. On May 29, 2007, a hearing on the motions was held.
On July 5, 2007, the trial court entered an order granting the Liquidator's motion for partial summary judgment and denying the J.W. Claimants' motion for summary judgment. Id. at 801. In relevant part, this order provides as follows:
3. ....
[T]his Court cannot award a double recovery in this liquidation of [CFM]. The J.W. [Claimants] own this Disputed Claim. In support of their claim against this liquidation estate, the J.W. [Claimants] present five Alaska judgments entered against Allvest in 2001. Those judgments collectively total $58,090 in compensatory damages, $35,691 in prejudgment interest, $11,677.56 in costs, $121,879 in attorneys fees, and $1,000,000 in punitive damages, for a sum total of $1,227,337.56.
The Liquidator has established, and the J.W. [Claimants] do not dispute, that they have already received $993,299.70 to satisfy their Alaska judgments from the Bankruptcy Court for the District of Alaska ("the Bankruptcy Court"). The J.W. [Claimants] presented the very same Alaska judgments to the Bankruptcy Court for payment that they present to this Court. ... [T]he J.W. [Claimants] proceed as an assignee in the insurance estate but seek recovery of the same loss they are pursuing against the insured directly. Although *1072 the J.W. [Claimants] proceed as owners of the insured Allvest's claim, it is undisputed that Allvest will not receive any of the proceeds this Court might pay because the J.W. [Claimants] own Allvest's claim free and clear of all liens. That is why a full payment by this Court would in fact give the J.W. [Claimants] a double recovery of their alleged loss. ....
As a matter of law the J.W. [Claimants] cannot recover twicefrom the Bankruptcy Court and this Courton the very same judgments. This Court will reduce any amount awarded on the J.W. [Claimants'] claim in the liquidation estate by the amount they have recovered on their Alaska judgments from Allvest's Bankruptcy. Accordingly, even if this Court were guided by the Alaska judgments, it will reduce this Disputed Claim by the $993,299.70 the J.W. [Claimants] have recovered from Allvest's Bankruptcy plus any additional amount the Allvest Bankruptcy estate subsequently pays them.
....
6. Claimants' summary judgment motion argues that this Court is required to pay the post-liquidation Alaska judgments in full as a matter of law. However, Indiana law provides just the opposite, stating that "a judgment or order against an insured ... entered after" the liquidation date "does not need to be considered as evidence of liability or the measure of damages." Ind.Code § 27-9-3-34(d)(1). Thus, while this Court may consider the post-liquidation Alaska judgments, it is not bound as a matter of law to pay them. Indeed, every court that has addressed this uniform insolvency law provision has ruled that the Liquidator may require a claimant to prove his claim rather than rely upon a post-liquidation judgment. Claimants' motion that [they are] entitled to judgment as a matter of law fails for this reason alone.
Id. at 802-06 (citations omitted).[6]
On December 18, 2008, the Liquidator submitted to the trial court a proposed final entry on DC 83. Id. at 814-15. On February 26, 2009,[7] the trial court approved the final entry, which provides in relevant part:
The [July 5,] 2007 Judgment recognized that this Disputed Claim 83 was based on certain Alaska Judgments awarded in favor of [the J.W.] Claimants, which totaled $1,227,337.56....
2. At the time of the [July 5,] 2007 Judgment, the [J.W.] Claimants had already recovered $993,299.70 on the Alaska Judgments from the bankruptcy of [Allvest]. The Court therefore set [the J.W.] Claimants' maximum recovery from the Liquidation Estate at $234,037.86, subject to further offset if [the J.W.] Claimants recovered additional amounts from the Alaska Bankruptcy estate.
3. On December 17, 2008, the Bankruptcy Court for the District of Alaska ordered that the bankruptcy estate pay the J.W. [Claimants] a further distribution of $302,290.12. This additional distribution to the [J.W.] Claimants fully offsets any recovery this Court could award on this Disputed Claim. Any additional distribution to the [J.W.] Claimants from the Liquidation Estate would *1073 represent a double recovery on the Alaska Judgments, which the law does not permit.
For the foregoing reasons, and in summary, IT IS ORDERED THAT Disputed Claim 83 is therefore closed, and [the J.W.] Claimants shall not receive any distribution from the Liquidation Estate.
Id. at 854-55.
On March 27, 2009, the J.W. Claimants filed a motion to correct error, arguing that (1) the final entry should be vacated because the Liquidator filed the proposed entry without an accompanying motion as required by the Indiana Trial Rules; (2) the Liquidator engaged in ex parte communications with the trial court; (3) the final entry was based upon the incorrect legal assumption that there had been a double recovery; and (4) the final entry was based upon the incorrect factual assumption that the J.W. Claimants obtained the assignment of Allvest's rights under the insurance contract and would not in fact "receive any funds recovered in this action." Id. at 894-901. On May 7, 2009, following a hearing, the trial court denied the motion to correct error. Appellants' Br. at 27. The J.W. Claimants appeal.

Discussion and Decision

Standard of Review
Because there is no dispute as to the underlying facts, each of the issues raised in this appeal presents a question of law, which we review de novo. See UFG, LLC v. Southwest Corp., 848 N.E.2d 353, 360-61 (Ind.Ct.App.2006) ("There is no material dispute as to the relevant facts, so each of these issues presents a question of law. We review questions of law de novo."), trans. denied.

I. Double Recovery
The trial court concluded that the J.W. Claimants cannot recover twice on the same judgments, and therefore the trial court would reduce the amount of any award on DC 83 by the amount the J.W. Claimants recovered on their Alaska judgments from Allvest's bankruptcy estate. Appellants' App. at 803. Consequently, the trial court dismissed DC 83 without deciding the claim on the merits because the J.W. Claimants received the value of the Alaska judgments from Allvest's bankruptcy estate.
The J.W. Claimants argue that a distribution by CFM's liquidation estate on DC 83 would not constitute a double recovery.[8] We address this issue mindful of the *1074 following circumstances of the case: (1) the trial court, the Liquidator, and von Gemmingen have conducted themselves in these insolvency proceedings based on the understanding that the J.W. Claimants are assignees of Allvest's rights as to DC 83; and (2) the J.W. Claimants have received payment from Allvest's bankruptcy estate for the Alaska judgments against Allvest.
The Liquidator asserts that the J.W. Claimants cannot be paid once for their claims by Allvest's bankruptcy estate and a second time for what she asserts are the same claims from CFM's liquidation estate, citing several cases. A review of these cases shows that they do not apply to the situation before us.
In INS Investigations Bureau v. Lee, 784 N.E.2d 566 (Ind.Ct.App.2003), trans. denied, Lees Inns owned a factory that was insured by Home Indemnity for $1.4 million. The insurance policy excluded losses due to arson committed by Lees or someone at their direction. After the factory was partially destroyed by fire, Home Indemnity hired INS Investigations to investigate its cause. Based on reports provided by INS, Home Indemnity denied Lees' claim on the basis that the fire was attributable to an intentional act by someone in authority and responsible for Lees.
Lees filed suit against Home Indemnity, claiming that they were entitled to the $1.4 million insurance policy coverage, consequential damages for Home Indemnity's breach of contract, and punitive damages because Home Indemnity acted in bad faith in denying their claim. Lees and Home Indemnity agreed to a settlement, in which Home Indemnity agreed to pay Lees $3.5 million and assign any claims it had against INS to Lees.
Acting pursuant to their assigned rights, Lees sued INS, alleging that INS breached its contract with Home Indemnity by failing to perform its obligations; that INS breached its duty of care to perform services in a diligent, workmanlike manner; and that INS acted fraudulently toward Home Indemnity and was liable for punitive damages. A jury awarded three verdicts in favor of Lees and ordered INS to pay approximately $2.3 million on the contract claim, approximately $2.5 million on the negligence claim, and $4.6 million in punitive damages on the fraud claim.
INS appealed, arguing, inter alia, that the trial court erred in awarding compensatory damages for claims of both negligence and breach of contract on the same facts and the same damages. In addressing INS's argument, we observed that although it "was not error for the trial court to allow the parties to proceed under the two theories[,] ... a party may not recover twice for the same wrong." Id. at 577. We concluded that the "law disfavors a windfall or a double recovery[,]" and here "the jury verdict resulted in a recovery in both tort and contract, thus allowing a double recovery for a single wrong." Id. (citation omitted). Accordingly, we vacated the damages for the contract claim and affirmed the recovery for the tort claim.
We observe that the Lees received $3.5 million for their claim against Home Indemnity and $2.5 million for Home Indemnity's claim against INS. This illustrates that double recovery does not apply where two separate, distinct claims exist. Rather, *1075 the double recovery issue in INS Investigations focused on the two different theories of recovery in the lawsuit brought by the Lees against INS. In contrast, the instant case does not involve two different theories of recovery brought by the same plaintiff against the same defendant for the same wrong. Although Allvest's claim against CFM for indemnity springs from the J.W. Claimants' claim against Allvest, they are two separate claims. One is the J.W. Claimants' claim against Allvest seeking damages resulting from sexual molestation by Allvest's employee. The other is Allvest's claim against CFM for indemnity under an insurance policy. The identity of the purchaser of DC 83 is of no consequence. Further, the fact that Allvest will not receive any payment from the Liquidator for DC 83 is irrelevant. DC 83 is based on Allvest's and CFM's rights and responsibilities under the insurance policy.
The following two cases cited by the Liquidator are distinguishable from the case at bar for the same reason. In Kellogg v. City of Gary, 562 N.E.2d 685 (Ind. 1990), citizens successfully sued the city of Gary for alleged violations of the Federal Civil Rights Statute (42 U.S.C. § 1983) and the Indiana Firearms Act. On appeal, the Kellogg court noted that the jury awarded two sets of damages, one for a violation of § 1983 and one for a violation of Indiana tort law pursuant to Article 1, Section 32 of the Indiana Constitution and the Indiana Firearms Act. Id. at 708. The Kellogg court vacated the claim based on Indiana tort law due to the plaintiffs' failure to comply with the Indiana Tort Claims Act, and therefore, double recovery was not in issue. Nevertheless, in dicta, the Kellogg court recognized that "the trial court's judgment on this jury verdict allowed a double recovery for a single wrong." Id.
In Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660 (Alaska 2002), Reeves proposed to Alyeska the idea of creating a visitor center where visitors could view the oil pipeline. Alyeska subsequently established the visitor center without him, and Reeves brought an action against Alyeska containing both tort and contract claims. Reeves sought to recover from Alyeska on his unjust enrichment claim and his breach of contract claim, but the court stated that "to award unjust enrichment damages in addition to breach of contract damages... would ... permit Reeves to receive a double recovery." Id. at 667-68 (emphasis in original). Thus, unlike this case, both Reeves and Kellogg involved two different theories of recovery by the same plaintiff against the same defendant.
Low v. Golden Eagle Insurance Co., 101 Cal.App.4th 1354, 125 Cal.Rptr.2d 155 (2002), is different from the previous cases, but it also does not support the Liquidator's position. There, S & W Associates negligently started a fire while constructing Homeowners' roof, causing approximately $130,000 in damages. Homeowners filed a claim for this loss with their insurance company, Allstate, as well as a claim with S & W's insurer, Golden Eagle. Homeowners obtained $130,000 from Allstate to cover the loss, but Golden Eagle denied the claim because S & W had misrepresented itself as a janitorial service.
Homeowners then sued S & W alleging $130,000 in property damage, $180,000 in lost property value, and compensatory damages in excess of $25,000. Allstate intervened, seeking to recover the $130,000 it had paid to Homeowners. Homeowners received a default judgment against S & W for over $2.2 million. Allstate later obtained its own default judgment against S & W for approximately $190,000, representing payment to Homeowners plus costs and interests.
*1076 Homeowners sued Golden Eagle to recover on their $2.2 million judgment. Golden Eagle successfully moved to reduce the amount of the Homeowners' judgment to $25,000 due to an error in Homeowners' complaint against S & W. Subsequently, Homeowners obtained an assignment of Allstate's default judgment against S & W and amended their complaint against Golden Eagle to pursue Allstate's default judgment of $190,000 as Allstate's assignees. The case traveled through the court system, and at some point conservation proceedings were instituted against Golden Eagle. Homeowners submitted a proof of claim in the conservation proceedings for $2.2 million. Golden Eagle denied Homeowners' claim, and the trial court denied Homeowners' application for an order to show cause. Homeowners appealed.
The issue on appeal was phrased as follows: "When the amount of an insured's recovery from a tortfeasor is capped due to an error in the insured's complaint, does this cap also limit the recovery of an insurer that intervenes to claim subrogation?" Id. at 159, 101 Cal.App.4th 1354. The Low court ultimately held that even though Homeowners had improperly indicated damages of $25,000 in their complaint against S & W and were limited to that amount, Allstate had properly pled for relief in the amount of $190,000, and therefore, Homeowners, as assignees of Allstate's subrogation rights, could recover the $190,000 of Allstate's default judgment. Id. at 159-65, 101 Cal.App.4th 1354. The question then arose as to whether Homeowners could recover the full amount of Allstate's default judgment. The Low court noted that an insured and a subrogated insurer cannot recover the same damages. Id. at 165, 101 Cal.App.4th 1354. The Low court had earlier observed that "although it is often said an insured and a subrogated insurer share a single cause of action, these parties cannot recover the same damages." Id. at 164, 101 Cal.App.4th 1354. The Low court concluded that Homeowners could not recover both their $25,000 default judgment against S & W and Allstate's $190,000 to the extent that Homeowners' $25,000 applied to compensatory property damages. Id. at 165, 101 Cal.App.4th 1354.
The important distinction between Low and this case is that Low involved the assignment of subrogation rights. As the Low court explained,
An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to stand in the shoes of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured.
Id. at 162, 101 Cal.App.4th 1354 (citation and quotation marks omitted); see also Farm Bureau Ins. Co. v. Allstate Ins. Co., 765 N.E.2d 651, 656-57 (Ind.Ct.App.2002) ("When an insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had."), aff'd on reh'g, 770 N.E.2d 859, trans. denied. As such, in Low, Homeowners and Allstate shared a single cause of action.[9] Here, the J.W. Claimants' claim against Allvest and Allvest's claim against CFM are not based on the same cause of action.
We conclude that because the J.W. Claimants' claim against Allvest is completely distinct from Allvest's claim against CFM, a distribution from CFM's liquidation estate on DC 83 to Allvest's assignee *1077 does not implicate the prohibition against double recovery.[10] Accordingly, we reverse the dismissal of DC 83 and remand for further proceedings.

II. Effect of Alaska Judgments
The trial court dismissed DC 83 without addressing its validity. On remand, the merits of DC 83 will likely need to be addressed, but the parties dispute the meaning of the J.W. Claimants' Alaska judgments against Allvest as they relate to DC 83. Accordingly, we address this issue.
This appeal arises from Indiana liquidation proceedings, which are governed by Title 27, Article 9 of the Indiana Code. With respect to judgments or orders entered against an insured, such as Allvest in CFM's liquidation proceedings, Indiana Code Section 27-9-3-34(d) provides: "The following do not need to be considered as evidence of liability or the measure of damages: A judgment or order against an insured or the insurer entered after the date of filing a successful petition for liquidation."[11]
Here, the parties do not dispute that the Alaska judgments were entered after the successful petition for CFM's liquidation was filed. The Liquidator argues that pursuant to Section 27-9-3-34(d), she is entitled to require the J.W. Claimants to prove their claim against Allvest from scratch. The J.W. Claimants assert that the Alaska judgments are entitled to full faith and credit pursuant to Article IV, Section 1 of the United States Constitution and that the Liquidator's interpretation renders Section 27-9-3-34(d) unconstitutional under Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947).
In addressing this issue, we observe the following rules of statutory interpretation:
When courts set out to construe a statute, the goal is to determine and give effect to the intent of the legislature. The first place courts look for evidence is the language of the statute itself, and courts strive to give the words their plain and ordinary meaning. We examine the statute as a whole and try to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result.
Cooper Indus., LLC v. City of South Bend, 899 N.E.2d 1274, 1283 (Ind.2009) (citations omitted). Also, "statutes concerning the same subject matter must be read together to harmonize and give effect to each." *1078 Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005).
The meaning of Section 27-9-3-34(d) is a question of first impression for Indiana courts. Our research shows that although a majority of states have adopted statutes containing similar language, only a few cases have addressed the meaning of this language. We review these cases for guidance.
The Montana Supreme Court addressed the meaning of a Montana statute similar to ours in In re Kowalski, 260 Mont. 269, 860 P.2d 104 (1993). There, Mary Jane Kowalski filed a medical malpractice suit in Michigan against Dr. Robert Lubin, her podiatrist. Dr. Lubin was insured against professional liability by a policy issued by Glacier. After Kowalski filed suit against Dr. Lubin, Glacier was declared insolvent and ordered into liquidation in Montana. Kowalski and Dr. Lubin separately submitted a claim to Glacier's liquidator. Some two years later, Kowalski and Dr. Lubin settled for $35,000, formalized by the entry of a consent judgment against Dr. Lubin in Michigan. Another insurer of Dr. Lubin paid $17,500 to Kowalski, and Dr. Lubin was to pay the remainder personally.
When the consent judgment was entered, Glacier's liquidator recommended that Dr. Lubin's claim be allowed in the amount of $17,500 and that Kowalski's claim be denied. Kowalski's claim was then referred to a referee. Before the referee, the liquidator contended that under the terms of the insurance policy, Glacier's obligation was limited to sums that Dr. Lubin was legally obligated to pay as damages, and that the amount he was legally obligated to pay had been conclusively established by the consent judgment entered in Michigan. According to the liquidator, Glacier had no obligation to Kowalski because the liquidator had agreed to indemnify Dr. Lubin for the $17,500 that he personally owed under the consent judgment.
The referee rejected the liquidator's argument and recommended that the district court order the liquidator to accept Kowalski's claim for payment of $163,696. Over the liquidator's objection, the district court accepted the referee's recommendation. The liquidator appealed.
On appeal, the Montana Supreme Court framed the issue as whether Kowalski, as a third party claimant in Glacier's liquidation, "was precluded by a consent judgment entered in her favor against Glacier's insured from claiming damages in this liquidation proceeding in an amount greater than the amount for which the judgment was entered." Id. at 108. The court noted that the liquidation statute "very clearly" addressed the issue as follows: "`No judgment or order against an insured or the insurer entered after the date of filing of a successful petition for liquidation ... need be considered as evidence of liability or of quantum of damages.'" Id. at 108-09 (quoting Mont.Code § 33-2-1365(4)).
In Kowalski, as here, there was no dispute that the consent judgment was entered after the filing of the successful petition for Glacier's liquidation. The Kowalski court reasoned as follows:
Had the claimant agreed to a consent judgment of $1 million (Dr. Lubin's policy limits), rather than $35,000, there can be little doubt that, based upon § 33-2-1365(4), MCA, the liquidator would not have felt compelled to honor her claim in that amount. The liquidator argues that the statute can only be raised by her in defense of claims. Yet, there is nothing in the plain language of that statute nor its legislative history, nor any authority provided to this Court, to suggest that it exists solely for the benefit of the liquidator. It is just as reasonable to conclude *1079 that its protection was intended for claimants who settle with impecunious insureds for less than their claim is worth, not knowing whether insolvent insurance companies will end up with sufficient assets with which to satisfy the full amount of their claims.
Therefore, we hold that pursuant to the statutory rules which control claims presented in liquidation, claimant's prior judgment did not conclusively establish the quantum of claimant's damages caused by Glacier General's insured, Dr. Lubin. The only procedure by which claimant could have established the amount that Dr. Lubin was legally obligated to pay her, once her claim was denied by the liquidator, was to present proof of those damages to the referee. This is what she did.
....
We hold that for these reasons claimant's claim in liquidation was not barred by the previous consent judgment entered in her favor in Michigan, and the District Court is affirmed.
Id. at 109 (emphasis added).
Another Montana case illustrates the application of Montana Code Section 33-2-1365(4) to a different factual scenario. In Matter of Estate of Michael v. Glacier General Assurance Co., 264 Mont. 261, 871 P.2d 272 (1994), the disputed claim arose from a financial security bond issued by Glacier. Earl Parks contracted to buy ninety-six horses from Russell Michael, Jr. Parks paid $1,000 and executed a promissory note for the balance of $1,749,000. To secure the note, Michael retained a security interest in the horses and required Parks to obtain a financial security bond in the amount of $1,749,000, which Parks obtained from Glacier.
Parks failed to make payments under the contract, and Michael sent notice of default to Parks and Glacier. In January 1985, Michael filed a lawsuit in Kentucky against Parks and Glacier. In August 1985, a successful petition for Glacier's liquidation was filed in Montana. In December 1985, the Kentucky court entered judgment in Michael's favor in the amount of $2,220,484.86.
In January 1986, Michael submitted a proof of claim to Glacier's liquidator in the amount of $2,220,484.86, which the liquidator denied. The claim proceeded to the referee, who recommended summary judgment in favor of Michael (now technically Michael's estate because Michael had passed away) granting Class 3 priority to Michael's claim. The district court adopted the referee's recommendation, and the liquidator appealed.
One of the liquidator's arguments on appeal was that the trial court erred in finding that Michael's claim deserved Class 3 priority. The liquidator asserted that Michael's claim on the bond was merged with the Kentucky court's judgment, and therefore Michael's claim was entitled to Class 4, rather than Class 3, priority status. The Montana Supreme Court held that Montana Code Section 33-2-1365(4) precluded merger of the claim on the bond into the final judgment entered by the Kentucky court because under that statute, the Kentucky judgment had "no binding effect on either liability or damages." Id. at 276. The Montana Supreme Court concluded,
Here, as in Kowalski, [Michael] must prove both liability and damages in order to establish [his] claim under the liquidation statutes. Because the Kentucky judgment had no conclusive effect, the only claim upon which [Michael] could establish Glacier General's liability and quantum of damages is the claim on the bond. [Michael] properly established [his] claim on the bond and, therefore, is entitled to Class 3 priority.... *1080 We hold that the District Court did not err in assigning Class 3 priority to [Michael's] claim.
Id. at 276-77 (emphasis added).
We now turn to a Pennsylvania case, Allen v. Reliance National Insurance Co., 821 A.2d 651 (Pa.2003), in which an employee of Yellowbird Bus Company injured his back in the course and scope of his employment. The employee began treatment with Dr. Mark T. Allen, who then billed Yellowbird's insurer, Reliance National Insurance Company, for his services. When Reliance failed to pay Dr. Allen's bills, he filed an application for fee review with the Workers' Compensation Bureau. The Bureau issued an administrative decision, finding that Reliance had not made timely payment. Reliance did not appeal.
After a rehabilitation order against Reliance was entered, Dr. Allen filed with the trial court, on June 4, 2001, a praecipe to enter judgment supported by certifications of the Bureau's decisions, which were attached as evidence of Dr. Allen's "judgments" against Yellowbird and Reliance. On June 29, 2001, Yellowbird and Reliance filed a petition to open the judgment, arguing that the administrative decisions issued by the Bureau did not constitute a money judgment against them, and therefore, the trial court had not been presented with any "judgments" to certify. On October 3, 2001, Reliance was ordered into liquidation. On September 18, 2001, the trial court issued an order denying the petition to open judgment.
Yellowbird and Reliance appealed, arguing that the trial court's refusal to open judgment was defective on its face. The Allen court stated that it would not address the appellants' argument until it determined whether the liquidation of Reliance divested the court of the authority to decide the merits of Dr. Allen's claim. The Allen court concluded that it could not decide the merits of Dr. Allen's claim against Yellowbird and Reliance because the merits of his claim could only be decided through Reliance's liquidation proof of claim process. The Allen court reached this conclusion on two grounds. First, the relevant Pennsylvania statute stated, "`No judgment or order against an insured or the insurer entered against [sic] after the date of filing of a successful petition for liquidation ... need be considered as evidence of liability or of quantum of damages.'" Id. at 655 (quoting 40 Pa. Stat. § 221.38(c)). Accordingly, the trial court's September 18, 2001, order had "no efficacy" and was not evidence of liability or of quantum of damages owed by Reliance. Id. Second, the Pennsylvania statute also provided that "`[u]pon issuance of an order appointing the commissioner liquidator of a domestic insurer ..., no action at law or equity shall be brought by or against the insurer ..., nor shall any such existing actions be continued after issuance of such order.'" Id. (citing 40 Pa. Stat. § 221.26(a)).[12] "Thus, by operation of law, the effort of Reliance to open the judgment improperly certified with the trial court in favor of Dr. Allen was stopped in its tracks as was the ability of Dr. Allen to collect on his judgment through the civil process." Id. Therefore, the Allen court vacated Dr. Allen's praecipe filed on June 4, 2001, and the trial court's order of September 18, 2001. Id. at 657.
*1081 Thus, Kowalski, Michael, and Allen, in applying statutes similar to ours, show that a judgment or order against an insured filed after a successful petition for liquidation against the insurer is not conclusive of liability or the quantum of damages.[13] In fact, the proof of claim process may establish that the insurer's damages are more or less than such a judgment or order. In contrast to Kowalski, Michael, and Allen, the J.W. Claimants contend that Indiana Code Section 27-9-3-34(d) must be interpreted in conjunction with Section 27-9-3-12 (see footnote 12, supra), which, according to the J.W. Claimants, provides authority for the Liquidator to seek a stay in proceedings in existence at the time the order appointing a liquidator is issued. The principle of comity could be invoked, say the J.W. Claimants, to prevent entry of the foreign judgment. Thus, the J.W. Claimants argue that the two statutes read together show that Section 27-9-3-34(d) is a permissive statute that preserves the right of the Liquidator to argue that there is a defect in the judgment based on the legally recognized exceptions to full faith and credit, such as lack of jurisdiction.
We reject the J.W. Claimant's interpretation of these statutes for two reasons. One, it is contrary to the plain language of Section 27-9-3-34(d). Two, it would in fact require the Liquidator to request stays in every state of the nation in which there is an ongoing lawsuit against the insurer or an insured. There are sound policy reasons for not reading such a requirement into the statutes. The purpose of liquidation is to maximize the assets of the estate for distribution to the claimants. To this end, the Liquidator must minimize its administrative costs. The assets of the estate would be depleted, perhaps unnecessarily so, if the Liquidator were required to journey all over the country staying lawsuits.
Based on Kowalski, Michael, and Allen and a plain reading of Indiana Code Section 27-9-3-34(d), we conclude that in CFM's liquidation proceedings, the Alaska judgments are not conclusive evidence of liability or the measure of damages. Therefore, the owner of DC 83 must prove both liability and the measure of damages in CFM's liquidation proceedings.
Having reached this conclusion, we must address the J.W. Claimants' assertion that the Liquidator's interpretation of Section 27-9-3-34(d) is unconstitutional under Morris and that the Alaska judgments are entitled to full faith and credit. Before turning to Morris, we observe that
[t]he Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. Const. art. IV, § 1. Full faith and credit means that the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced. Indiana has codified this notion at Indiana Code Section 34-39-4-3, which provides that records and judicial proceedings from courts in other states *1082 "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated."
Gardner v. Pierce, 838 N.E.2d 546, 550 (Ind.Ct.App.2005) (some citations omitted). "A statute is presumed constitutional until the party challenging the statute clearly overcomes this presumption by a contrary showing." Shuger v. State, 859 N.E.2d 1226, 1231 (Ind.Ct.App.2007), trans. denied. "This court may nullify a statute on constitutional grounds only where such a result is clearly rational and necessary." Id.
In Morris, Chicago Lloyds was an Illinois insurance company authorized to do business in Missouri. In 1934, Charles Morris sued Chicago Lloyds in Missouri for malicious prosecution and false arrest. In 1938, before judgment was obtained in Missouri, Chicago Lloyds was ordered into liquidation in Illinois, and a liquidator was appointed. The Illinois court issued an order staying all suits against Chicago Lloyds. Morris had notice of the stay but continued to prosecute his claim in Missouri. Chicago Lloyds' attorney withdrew from the Missouri suit, stating to the Missouri court that the Illinois liquidation proceedings had vested all the property of Chicago Lloyds in the liquidator. Chicago Lloyds' attorney did not argue that the Illinois stay was entitled to full faith and credit in the Missouri court. Thereafter, Morris obtained a judgment against Chicago Lloyds in the Missouri court and filed a proof of claim in the Illinois proceeding, attaching a copy of his Missouri judgment. The liquidator denied the claim, and the Illinois Supreme Court sustained the denial.
On appeal to the United States Supreme Court, Morris argued that the Missouri judgment was entitled to full faith and credit in the Illinois court. In addressing his argument, the Supreme Court observed that Morris was not seeking anything other than the right to prove his claim in judgment form. 329 U.S. at 548, 67 S.Ct. 451. The Supreme Court then reasoned as follows:
Nor is there any lack of privity between Chicago Lloyds and the Illinois liquidator. There is no difference in the cause of action whether Chicago Lloyds or the liquidator is sued. The Missouri judgment represents a liability for acts committed by Chicago Lloyds, not for those of the liquidator. The claims for which the Illinois assets are being administered are claims against Chicago Lloyds. The Missouri judgment represents one of them. ....
A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default. The full faith and credit to which a default. .... The full faith and credit to which a judgment is entitled is the credit which it has in the State from which it is taken, not the credit that under other circumstances and conditions it might have had. ....
Under Missouri law [Morris's] judgment was a final determination of the nature and amount of his claim. That determination is final and conclusive in all courts. Because there is a full faith and credit clause a defendant may not a second time challenge the validity of the plaintiff's right which has ripened into a judgment. For the Full Faith and Credit Clause established throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be conclusive of the rights of the parties in every other court as in that where the judgment was rendered.
*1083 Id. at 550-52, 67 S.Ct. 451 (citations and quotation marks omitted) (emphasis added). The Supreme Court concluded that Morris's claim had been conclusively determined by the Missouri judgment and could not be relitigated in the Illinois proceedings. Id. at 554, 67 S.Ct. 451.
Morris is different from the case before us. In Morris, the claimant sought to prove his claim in the liquidation in the form of his judgment against the insurance company. The claim and the judgment were one and the same because Chicago Lloyds was the actual defendant in the Missouri lawsuit, and the Missouri judgments represented a "liability for acts committed by Chicago Lloyds." Id. at 550, 67 S.Ct. 451. The Supreme Court noted that Morris had the same cause of action whether he sued Chicago Lloyds or the Liquidator.
Here, the J.W. Claimants have filed a claim in CFM's liquidation based on Allvest's insurance policy with CFM. The Alaska judgments against Allvest are not based on the same cause of action that underlies Allvest's claim against CFM. The two claims are not one and the same. The Alaska judgment represents Allvest's liability for acts it committed. In these liquidation proceedings, Allvest, the defendant in the Alaska Lawsuit, is not challenging the Alaska judgments. Although the Alaska judgments would be binding as to the J.W. Claimants and Allvest under the Full Faith and Credit Clause, the Alaska judgments are not binding as to the value of Allvest's claim against CFM. The J.W. Claimants concede that whether the Alaska judgments will have to be paid by the Liquidator raises a separate issue of coverage. Appellants' Br. at 22. Based on the foregoing, we conclude that Morris does not support the J.W. Claimants' argument that the Alaska judgments are conclusive as to the value of DC 83 in CFM's liquidation proceedings. As such, Morris does not render our reading of Section 27-9-3-34(d) unconstitutional.
As a final consideration, we observe that Indiana Code Section 27-9-3-34(d) does not prohibit a judgment or order against an insured or an insurer entered after the date of filing a successful petition for liquidation from being considered as evidence of liability or the measure of damages. Section 27-9-3-34(d) merely states that such a judgment or order does not "need" to be considered as evidence. Just because something does not need to be considered as evidence does not mean that it cannot be. Section 27-9-3-34(d) suggests that a judgment or order issued against an insured or the insurer entered after the date of filing a successful petition for liquidation may be considered as evidence of liability and the measure of damages, but it does not have to be. The permissive language of the statute raises some questions not addressed by the parties. What criteria are to be used to determine whether such a judgment or order may be considered as evidence of liability or the measure of damages? Which entity, the Liquidator or the trial court, is to make the determination? The statute is silent on these matters.
We conclude that although a judgment or order against an insured or the insurer entered after the date of filing a successful petition for liquidation is not conclusive as to liability or the measure of damages, whether such a judgment or order may be, or should be, considered as evidence must be determined on a case-by-case basis. The particular facts of each case, the legal issues involved, and the Indiana Rules of Evidence should be used to determine whether such a judgment or order may be considered as evidence of liability or the measure of damages.
*1084 As to who makes such a determination, we note that Section 27-9-3-34 also sets forth the information that a claimant must include in a proof of claim and specifically provides that "the liquidator" may require that a prescribed form be used and may request the claimant to provide additional information or evidence as necessary. See Ind.Code §§ 27-9-3-34(b) ("The liquidator may require that a prescribed form be used, and may require that other information and documents be included."); XX-X-X-XX(c) ("At any time, the liquidator may: (1) request the claimant to present information or evidence supplementary to that required by subsection (a); (2) take testimony under oath; (3) require production of affidavits or depositions; or (4) obtain additional information or evidence necessary."). In contrast, Section 27-9-3-34(d) does not specify that it is the Liquidator who need not consider a judgment or order against an insured or the insurer entered after the date of filing a successful petition for liquidation. Initially, however, the Liquidator is the first entity to review a proof of claim and must determine what effect to give such a judgment. Given that the Liquidator must use the resources of the liquidation estate wisely to maximize the assets of the estate, we expect that the costs of relitigating a judgment will have to be considered. If a claim is disputed and proceeds to a hearing before the trial court, then the trial court becomes the proper authority to make the determination. It would be helpful if the legislature provided further guidance on the process.[14]

III. Jury Trial
Finally, we address the J.W. Claimants' assertion that the trial court erred in denying their request for a jury trial. The question of whether a party is entitled to a jury trial for disputes concerning claims in liquidation proceedings is another issue of first impression for Indiana. We note that Article 1, Section 20 of the Indiana Constitution provides, "In all civil cases, the right of trial by jury shall remain inviolate." It is well settled that this provision preserves the right to a jury trial only as it existed at common law. Songer v. Civitas Bank, 771 N.E.2d 61, 63 (Ind.2002). Further, it has long been recognized that a party is not entitled to a jury trial on equitable claims. Id. These principles are embodied by Indiana Trial Rule 38(A), which provides in relevant part:
Causes triable by court and by jury.
Issues of law and issues of fact in causes that prior to [June 18, 1852] were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jurythe former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.
The Liquidator asserts that as of June 1852, receiverships and liquidations were entirely equitable in nature, citing Ingersoll v. Cooper, 5 Blackf. 426 (1840), and Connecticut Mutual Life Insurance Co. v. *1085 Athon, 78 Ind. 10, 17 (1881). The J.W. Claimants fail to respond to this assertion or discuss these cases. We note that a "suit for the dissolution of an insurance company has been regarded as an equitable action." 44 C.J.S. Insurance § 196 (2007). On this basis, we must conclude that the J.W. Claimants are not entitled to a jury trial.
Furthermore, Indiana Code Section 27-9-3-37(b) prescribes a hearing before a judge, not a jury:
Whenever objections are filed with the liquidator and the liquidator does not alter his denial of the claim as a result of the objections, the liquidator shall ask the Marion County circuit court for a hearing as soon as practicable and give notice of the hearing by first-class mail to the claimant or his attorney and to any other persons directly affected, not less than ten (10) nor more than thirty (30) days before the date of the hearing. The matter may be heard by the court or by a court appointed referee who shall submit findings of fact along with his recommendation.
(Emphasis added and footnote omitted.) The J.W. Claimants contend that Section 27-9-3-37(b) is permissive and is insufficient to override Indiana's strong preference for jury trials. Although Section 27-9-3-37(b) provides that the matter "may" be heard by the court, we think that "may" is used because either the court or a court appointed referee is permitted to hear the matter. Accordingly, we are unpersuaded by the J.W. Claimants' argument and find no error in the trial court's denial of their request for a jury trial.

Conclusion
We conclude that the J.W. Claimants' claim against Allvest and Allvest's claim against CFM are two separate, distinct claims, and therefore, a distribution on DC 83 will not result in a double recovery. Accordingly, we conclude that the trial court erred in finding otherwise and reverse its dismissal of DC 83. Further, we conclude that pursuant to Indiana Code Section 27-9-3-34(d), the Alaska judgments have no conclusive, binding effect in CFM's liquidation proceedings as to liability and the measure of damages, although they may be considered as evidence thereof. Finally, we conclude that the trial court did not err in denying the J.W. Claimants' request for a jury trial. Therefore, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
RILEY, J., and VAIDIK, J., concur.
NOTES
[1] Although the J.W. Claimants may not be the actual owners of DC 83, the parties and the trial court treated the J.W. Claimants as Allvest's assignees, and the trial court dismissed the claim based on that understanding. Therefore, we proceed as though the J.W. Claimants are the appellants for purposes of this appeal.
[2] We heard oral argument on April 12, 2010, in Indianapolis. We thank counsel for their able presentations.
[3] The policy was actually issued by Classic Syndicate, Inc., which merged with and into CFM.
[4] The J.W. Claimants concede that "the surviving portion of the disputed claim in this case is five judgments entered by the court in Alaska after a contested jury trial which Allvest lost." Appellants' Br. at 19.
[5] This procedure was as follows: (1) the trial court was to set a date for a prehearing conference on the disputed claim; (2) the Liquidator was to send notice of the prehearing conference to the claimant; (3) the claimant was to serve a written "Statement of the Case" on the Liquidator; (4) the Liquidator was to serve a "Statement of Defenses" on the claimant; (5) the Liquidator and the claimant were to confer in person or by telephone prior to the prehearing conference; and (6) at the prehearing conference, the Liquidator was to submit to the trial court a report of the parties' conference, the statement of the case, and the statement of defenses. Appellants' App. at 195-202.
[6] The trial court granted the J.W. Claimants' summary judgment motion to the extent that Alaska law would be applied to the interpretation of the insurance policy and "[a]ny recovery on Disputed Claim [83] will include any pre-judgment interest pursuant to Alaska law." Appellants' App. at 810. The Liquidator does not challenge these rulings.
[7] In January 2009, the Marion Circuit Court's newly elected judge began his tenure.
[8] The J.W. Claimants assert that the Liquidator waived the double recovery defense by failing to raise it in its statement of defenses and that the Liquidator is judicially estopped from asserting the double recovery defense. Because we resolve the double recovery issue on the merits in favor of the J.W. Claimants, we need not address their waiver or judicial estoppel arguments. However, we briefly address the J.W. Claimants' request that in the event we find that the Liquidator did not waive her affirmative defenses, we remand the case for a trial on the merits of the affirmative defenses. The J.W. Claimants assert that Indiana law does not permit a party to argue both that an affirmative defense is waived and, in the alternative, that it has no merit, citing Paint Shuttle, Inc. v. Continental Casualty Co., 733 N.E.2d 513 (Ind.Ct.App. 2000), trans. denied (2001). Based on their interpretation of Paint Shuttle, the J.W. Claimants did not address the merits of the Liquidator's affirmative defenses before the trial court. However, the J.W. Claimants misread Paint Shuttle. In that case, the plaintiff argued for the first time on appeal that because the defendant had not raised its affirmative defense in its answer, the defense was waived. We concluded that the issue had been tried by implied consent. Id. at 525. Thus, Paint Shuttle teaches that if a party chooses to address an affirmative defense on the merits at trial without challenging its timeliness, that party cannot later argue on appeal that the affirmative defense is waived. Paint Shuttle, however, does not stand for the proposition that where a party chooses to challenge the timeliness of an affirmative defense, that party is precluded from arguing the merits of the defense. A party may not object solely to the timeliness of an affirmative defense at trial and on appeal and, in the event the court finds that the affirmative defense was not waived, expect remand on the merits of the affirmative defense. Such a process would be a waste of judicial resources.
[9] "[A] `cause of action' is a legal theory of a lawsuit." Songer v. Civitas Bank, 771 N.E.2d 61, 66 (Ind.2002) (citing BLACK'S LAW DICTIONARY 213, 214 (7th ed. 1999)).
[10] In the motion to correct error, von Gemmingen stated that if "the ultimate recipient of the funds is somehow relevant, there is still no double recovery because the J.W. et al. creditors in the Alaska bankruptcy case will not receive any of the funds recovered in this action." Appellants' App. at 900-01. The Liquidator asserts that von Gemmingen either waived the assertion that he is the actual owner of DC 83 or is estopped from asserting it. However, whether von Gemmingen or the J.W. Claimants own DC 83 is irrelevant to the validity of DC 83 or the quantum of damages due thereunder. The Liquidator asserts, without any evidence, that von Gemmingen deliberately misrepresented the identity of the real party in interest. Whether there has been any deception committed on the trial court is not a matter ripe for our review, as it has not been presented to the trial court.
[11] Indiana Code Section 27-9-3-34(d) also provides that a judgment or order against an insured or the insurer entered at any time by default or by collusion or one entered not more than four months before the filing of the petition does not need to be considered as evidence of liability or the measure of damages.
[12] Indiana has a similar provision, which reads, "Upon issuance of an order appointing a liquidator of a domestic insurer or of an alien insurer domiciled in Indiana, an action at law or equity may not be brought against the insurer or liquidator, whether in Indiana or elsewhere, nor shall any existing actions be maintained or further presented after issuance of an order." Ind.Code § 27-9-3-12(a). We observe that the provision does not apply to the insured.
[13] In another case cited by the Liquidator, Ohio v. Ramos, 41 Ohio App.3d 88, 534 N.E.2d 885 (1987), the Ohio appeals court found that the Ohio trial court did not abuse its discretion in invoking the doctrine of judicial comity to give effect to an Indiana order of liquidation that stayed all causes of action against an insolvent insurer domiciled in Indiana. Id. at 887. The Ohio court based its conclusion, in part, on the Ohio statute that contains language identical to that of Indiana Code Section 27-9-3-34(d). Id. Based on that language, the Ohio court noted that "a formal judgment will not benefit the state when it does make its claims [in the Indiana liquidation proceedings]." Id.
[14] Having concluded that the Alaska judgments are not conclusive evidence of liability or the measure of damages, we need not address the J.W. Claimants' arguments regarding prejudgment and postjudgment interest because these concepts are rendered meaningless by our conclusion. Likewise, we need not address the J.W. Claimants' argument that the Liquidator's decision to defend unconditionally and alleged breach of duty to defend trigger liability for the full amount of the Alaska judgments.